T.C. Memo. 1995-484


UNITED STATES TAX COURT


BETTY J. SHACKELFORD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13183-93.              Filed October 5, 1995.


<u>Roderick L. MacKenzie</u>, for petitioner.

<u>Daniel J. Parent</u> and <u>Kathryn K. Vetter</u>, for respondent.


MEMORANDUM OPINION


RUWE, <u>Judge</u>:  Respondent determined a deficiency of $40,012 in petitioner's 1989 Federal income tax.  Respondent further determined an accuracy-related penalty pursuant to section 6662(a)[1] in the amount of $7,949.

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issues for decision are: (1) Whether petitioner's correct filing status for the taxable year 1989 was "single" or "married filing separate"; (2) whether petitioner's Schedule C gross receipts were understated by $3,600; (3) whether petitioner is entitled to certain Schedule C deductions for the taxable year 1989; (4) whether petitioner is entitled to a charitable contribution deduction in the amount of $924; and (5) whether petitioner is liable for the accuracy-related penalty for negligence or substantial understatement of income tax pursuant to section 6662(a) for the taxable year 1989.

Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference.

## Background

At the time petitioner filed her petition in this case, she resided in Roseville, California.

Petitioner is a certified vocational rehabilitation counselor. During 1989, petitioner operated Shackelford Vocational Rehabilitation Services as a sole proprietorship (hereinafter referred to as petitioner's business). Petitioner maintained a business checking account with Wells Fargo Bank in Marysville, California. She used the deposits to this account to determine her Schedule C gross receipts for tax purposes.

As a vocational rehabilitation counselor, petitioner worked

with clients who were injured on the job and helped them find new employment. Petitioner would evaluate each client, establish a plan for the client (i.e., job placement, a school or training program, or establishing self-employment), and monitor the progress of the client. One-half to two-thirds of petitioner's clients were Hispanic. Thus, it was often necessary for petitioner to communicate in Spanish with her clients--both orally and in writing. Although petitioner could speak Spanish and could draft an informal letter or document in Spanish, she could not write in Spanish well enough to draft a formal document. Thus, she would have to draft such documents in English and hire someone to translate them into Spanish.

Petitioner and Richard Maynard (Mr. Maynard) went through a marriage ceremony on May 23, 1985, and the marriage certificate was filed on May 24, 1985. With the assistance of separate counsel, petitioner and Mr. Maynard entered into a prenuptial agreement on May 22, 1985. Petitioner filed an Inventory of Separate Property in Placer County, California, on November 5, 1985. During 1989, petitioner and Mr. Maynard resided together and held themselves out as being married.

On March 2, 1994, petitioner filed a petition in the Superior Court in El Dorado County, California, requesting an annulment of her marriage on the basis of fraud. An uncontested hearing was held on April 21, 1994, and a Judgment of Nullity was entered effective on that date.

During 1989, Mr. Maynard was a certified public accountant and a partner in Maynard & McDonald, an accounting firm. Maynard & McDonald provided payroll services for petitioner's business. A checking account in the name of Maynard & McDonald Trust was maintained at the Bank of Alex Brown. The purpose of the trust account was to handle funds for Maynard & McDonald partnership clients. Funds deposited into the account were not included in the income of Maynard & McDonald partnership.

Renata Reeves Hernandez (Renata) is petitioner's daughter. During most of 1989, Renata resided in Albuquerque, New Mexico. Renata moved to Marysville, California, in October 1989. Prior to moving to California in 1989, Renata translated English letters and documents into Spanish for use in petitioner's business. Petitioner would mail or fax the documents to Renata in Albuquerque, and Renata would translate and return them. After Renata moved to California in 1989, she went to work for petitioner's business as a translator and a job developer, working with petitioner's Hispanic clients.

For purposes of convenience, the additional findings of fact with respect to respondent's specific determinations will be combined with our discussion of each issue.

## Marital Status

On her 1989 Federal income tax return, petitioner designated her filing status as "single". The first issue for decision is

whether petitioner's correct filing status for the taxable year 1989 was "single" or "married filing separate".

As a preliminary matter, however, we must determine which party bears the burden of proof on this issue.

Generally, the burden of proof is on the taxpayer. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Respondent bears the burden of proof, however, with respect to "any new matter, increases in deficiency, and affirmative defenses, pleaded in the answer". Rule 142(a). An assertion in an amended answer is treated as a new matter when it either increases the original deficiency or requires the presentation of different evidence. Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 507 (1989); Achiro v. Commissioner, 77 T.C. 881, 890 (1981). The assertion of a new theory that merely clarifies or develops the original determination is not a new matter in respect of which respondent bears the burden of proof. Wayne Bolt & Nut Co. v. Commissioner, supra; Achiro v. Commissioner, supra; Estate of Jayne v. Commissioner, 61 T.C. 744, 748-749 (1974).

In her notice of deficiency, respondent determined a deficiency in petitioner's income tax of $40,012 and an accuracy-related penalty of $7,949. On April 6, 1994, respondent filed a Motion for Leave to File an Amendment to Answer, which this Court granted. In her amended answer, respondent asserted a deficiency in petitioner's income tax of $42,583 and an addition to tax of $8,463 based on respondent's revised determination that

petitioner's correct filing status was "married filing separate" rather than "single".

Respondent's assertion in the amended answer clearly increased the original deficiency. In addition, the new assertion requires the presentation of different evidence regarding petitioner's marital status. Accordingly, we find that the issue of petitioner's filing status is a new matter, in respect of which the burden of proof falls on respondent.

The determination of whether an individual is married shall be made as of the close of the taxable year. Sec. 7703(a)(1). A person who is married may file a joint return with his or her spouse or may file separately; however, a married person may not file as an unmarried individual. Sec. 1(a), (c), and (d). Marital status for Federal tax purposes is defined by State law. Lee v. Commissioner, 64 T.C. 552, 556-559 (1975), affd. 550 F.2d 1201 (9th Cir. 1977); Gersten v. Commissioner, 28 T.C. 756, 770 (1957), affd. in part and remanded in part 267 F.2d 195 (9th Cir. 1959). Thus, we must look to California law to determine whether petitioner was married as of the close of the taxable year 1989.

Petitioner and Mr. Maynard were married on May 23, 1985, and the marriage certificate was filed on May 24, 1985. As of the close of 1989, petitioner and Mr. Maynard were residing together and were holding themselves out as being married. On March 2, 1994, however, petitioner filed a petition in the Superior Court in El Dorado County, California, requesting an annulment of a

voidable marriage on the basis of fraud pursuant to section 4425(d) of the California Code.[2]  A Judgment of Nullity was entered effective on April 21, 1994.  Petitioner argues that the effect of the Judgment of Nullity is to render her marriage void from its inception and that her filing as "single" for 1989 was not in error.

In general, an annulment decree has the effect of declaring a marriage void ab initio under the law of California.  It thus "relates back" to erase the marriage from the outset.  Sefton v. Sefton, 291 P.2d 439, 440 (Cal. 1955); see Cal. Family Code sec. 2212(a) (West 1994).  However, the doctrine of "relation back" is not without its exceptions.  The doctrine is a legal fiction that was fashioned by the courts to do substantial justice as between the parties to a voidable marriage.  Sefton v. Sefton, supra at 441.  "A judgment of nullity of marriage is conclusive only as to the parties to the proceeding and those claiming under them."  Cal. Family Code sec. 2212(b) (West 1994).  Thus, the Supreme Court of California warns that "in cases involving the rights of third parties, courts have been especially wary lest the logical appeal of the fiction should obscure fundamental problems and lead to unjust or ill-advised results respecting a third party's rights."  Sefton v. Sefton, supra at 441; see also Hendrix v. United States Immigration & Naturalization Serv., 583 F.2d 1102,

---

[2]Sec. 4425(d) of the Cal. Civil Code was repealed effective Jan. 1, 1994.  That section was replaced with sec. 2210(d) of the Cal. Family Code without substantive change.

1103 (9th Cir. 1978); <u>Powers v. Fox</u>, 158 Cal. Rptr. 92, 95 (Ct. App. 1979); <u>Interinsurance Exch. of the Auto. Club v. Velji</u>, 118 Cal. Rptr. 596, 600 (Ct. App. 1975).

In the present case, petitioner filed her petition for an annulment of a voidable marriage only 2 months prior to the trial of this case. Up until that time, she held herself out as being married. We do not think that petitioner's current attempt to claim that she was single during 1989, as a result of the Judgment of Nullity, promotes the purposes for which the relation-back doctrine was intended. Accordingly, we hold that the Judgment of Nullity in the present case does not relate back to the date of the marriage and, therefore, is not binding on the Commissioner for purposes of petitioner's Federal income tax filing status.[3]

## Understatement of Gross Receipts

Petitioner determined her Schedule C gross receipts based upon deposits into her business bank account. Respondent increased petitioner's gross receipts by $14,658 in the notice of deficiency. Petitioner concedes she understated her gross

---

[3]Respondent also argues that petitioner's securing of an uncontested annulment constituted a "sham transaction" designed to manipulate her marital status for Federal tax purposes and, thus, should not be given effect. Respondent points to the timing of the petition for nullity of marriage, which was shortly after respondent informed petitioner by letter that she intended to raise petitioner's marital status as an issue, as support for this contention. However, as a result of our holding, we see no reason to look behind the State court's judgment.

receipts by $7,652.18. Respondent concedes $3,406 of the adjustment to petitioner's gross receipts. The remaining $3,600 still in issue will be determined by whether the proceeds from the 1989 sale of petitioner's automobile were deposited into the business account.

In November or December 1989, petitioner sold an automobile that she had used in her business for $3,600. Petitioner reported the sale of the automobile on Form 4797 (Sales of Business Property), which was attached to her 1989 Federal income tax return. Petitioner claims that the $3,600 was also deposited to her business bank account and should not be included again as business gross receipts. Respondent disputes petitioner's claim that the sales proceeds were deposited into petitioner's business bank account.

Beyond her own self-serving testimony, petitioner offered no evidence to establish that the proceeds from the sale of the automobile were deposited into her business bank account. Although petitioner points to her filing of the Form 4797 to corroborate her testimony, the filing of this form does not prove that the proceeds were deposited into her business bank account. Accordingly, we hold that petitioner failed to prove respondent's determination erroneous and sustain respondent's determination of gross receipts as modified by the parties' respective concessions. See Clark v. Commissioner, 266 F.2d 698, 708-709 (9th Cir. 1959), remanding T.C. Memo. 1957-129; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

Additional Schedule C Deductions

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to any deductions claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers are required to maintain records that are sufficient to substantiate claimed deductions. Sec. 6001.

Section 162 generally allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Such expenses must be directly connected with or pertain to the taxpayer's trade or business. Sec. 1.162-1(a), Income Tax Regs. The determination of whether an expenditure satisfies the requirements of section 162 is a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943).

Petitioner claims that she is entitled to a deduction in the amount of $52,999.50, which she originally reported as cost of goods sold on her Schedule C, and which was disallowed by respondent. The $52,999.50 amount represented the sum of checks drawn on petitioner's business bank account. These checks were made payable to her husband, Mr. Maynard, and consisted of six checks for $3,500, six checks for $5,000, a check for $1,983, and a check for $16.50. The checks were deposited into the trust account of Maynard & McDonald.

Petitioner alleges that these amounts were paid to Mr. Maynard for consulting services he provided for her business. Petitioner testified that Mr. Maynard advised her with respect to equipment,

hiring practices, and marketing in addition to advising her with respect to specific clients. Petitioner further testified that the State of California required that she utilize the type of services performed by Mr. Maynard. Respondent, on the other hand, argues that petitioner has failed to meet her burden of proving that these amounts were paid to Mr. Maynard for consulting services. Respondent contends that any services that Mr. Maynard may have performed would not have warranted the large amount paid to him. Respondent urges us to view this as a "family situation" and suggests that the $52,999.50 was simply a transfer of money between petitioner and her husband.

These very same payments totaling $52,999.50 from petitioner to her husband are also at issue in a separate case involving petitioner's husband--Maynard v. Commissioner, docket No. 13220-93. That case was originally scheduled for trial on May 16, 1994, at Carson City, Nevada.[4] When that case was called, the parties in that case filed a stipulation disposing of some, but not all, of the issues, and we granted Mr. Maynard's motion to continue his case. The case was subsequently tried before Judge Gerber on June 12, 1995.

One of the issues in Mr. Maynard's case was whether he fraudulently failed to report the $52,999.50 he received from petitioner. The Commissioner's Answer in that case alleged:

---

[4]Petitioner's case was tried on May 19, 1994, in Carson City, Nevada.

> During 1989, Shackelford Vocational Rehabilitation
> Services (SVRS) wrote checks payable to petitioner
> totalling $52,983[5] for consulting services. Petitioner
> did not report any of these amounts as income on his 1989
> income tax return.

In his reply, Mr. Maynard denied "that he failed to report any of
these amounts as income on his 1989 income tax return." In the
stipulation filed on May 16, 1994, in Mr. Maynard's case, the
parties stipulated the following:

> During 1989, Maynard received $52,999.50 from Shackelford
> Vocational Services for consulting services. Petitioner
> concedes that this amount is income to him.

The Commissioner's allegations and the stipulation in Maynard
v. Commissioner, docket No. 13220-93, clearly set forth the factual
basis upon which the Commissioner relies in that case; i.e., that
the payments to Mr. Maynard were "for consulting services". This
stipulation is inconsistent with respondent's position in the
instant case; i.e., that the payments were not for consulting
services or were in excess of what was warranted by whatever
nominal consulting services Mr. Maynard rendered to petitioner. We
agree with respondent that any portion of these payments in excess
of those made as reasonable compensation for consulting services
would be personal intrafamily transfers. However, such personal
intrafamily transfers would not be taxable income to Mr. Maynard.

_____

[5]The difference between this amount and the amount at issue
in the instant case is equal to the $16.50 check, which we have
previously mentioned.

But as we have noted, respondent has stipulated and, therefore, established in Mr. Maynard's case, that the payments were for consulting services and that the entire $52,999.50 is includable in Mr. Maynard's taxable income. This stipulation is obviously advantageous to the Commissioner in Mr. Maynard's case and, in accordance with the stipulation, the Court will redetermine Mr. Maynard's tax deficiency by including the payments in his taxable income.

The inconsistency between the Commissioner's stipulation in Maynard v. Commissioner, docket No. 13220-93, that the payments to Mr. Maynard were income from consulting services, and her position in the present case that the exact same payments were not for consulting services is one that we find most troublesome.[6] At trial, neither party in this case mentioned the stipulation in Mr. Maynard's case, and, except for an oblique reference to that stipulation in petitioner's reply brief, there was no argument about its legal implications for petitioner. In her reply brief, petitioner asks us to take judicial notice of the stipulation in Mr. Maynard's case but makes no argument as to how we can turn a stipulation in one case into a finding of fact in another. Of course, this Court may take judicial notice of its own records, including any pleadings and stipulations filed by the parties,[7] but

---

[6]See Andrews v. Commissioner, 73 AFTR2d 94-660 (9th Cir. 1993).

[7]See United States v. Rey, 811 F.2d 1453, 1457 n.5 (11th
(continued...)

Rule 91(e) provides that "A stipulation and the admissions therein shall be binding and have effect only in the pending case and not for any other purpose, and cannot be used against any of the parties thereto in any other case or proceeding."

While we may not take a stipulated fact in one case and use it to find facts in another case, we think that we do have the ability to prevent inconsistent results in the situation before us. We have previously held that we may apply equitable principles to decide a matter over which we have jurisdiction, Woods v. Commissioner, 92 T.C. 776, 787-788 (1989). Such equitable principles include the doctrine of judicial estoppel, Reynolds v. Commissioner, 861 F.2d 469, 472 (6th Cir. 1988), revg. T.C. Memo. 1987-261; Huddleston v. Commissioner, 100 T.C. 17, 28 (1993). The doctrine of judicial estoppel protects the integrity of the judicial process by preventing a party from successfully asserting one position before a court and thereafter asserting a completely contradictory position before the same or another court merely because it is now in that party's interest to do so. Reynolds v. Commissioner, supra at 472; Huddleston v. Commissioner, supra at 26. Such manipulation of the judicial process has been characterized by the courts as "cynical gamesmanship * * * to suit

---

[7](...continued)
Cir. 1987); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980); St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979). "Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it." St. Louis Baptist Temple, Inc. v. FDIC, supra at 1172.

an exigency of the moment", Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990); "blowing hot and cold", Allen v. Zurich Ins. Co., 667 F.2d 1162, 1167 n.3 (4th Cir. 1982); and "playing fast and loose with the courts", Scarano v. Central R.R., 203 F.2d 510, 513 (3d Cir. 1953).

In order to invoke judicial estoppel against a party, that party's contrary position must have previously been accepted by the court, which means only that the court must have adopted a position urged by the party, either as a preliminary matter or as a part of a final disposition.[8]  In the Tax Court, a stipulation is treated as a conclusive admission by the parties, and the Court will not permit a party to change or contradict a stipulation, except in extraordinary circumstances.  Rule 91(e).  Thus, while this Court has not yet decided the ultimate matter in Mr. Maynard's case, the Court will certainly find that Mr. Maynard received $52,999.50 from petitioner in 1989 "for consulting services" and that this amount is includable in Mr. Maynard's taxable income for 1989.[9]  Such a finding supports the Commissioner's position in Mr. Maynard's case. Under these circumstances, the fact that the Court has yet to issue an opinion or render a decision in Mr. Maynard's case, should not

---

[8]"Acceptance by a court does not mean that the party being estopped prevailed in the prior proceeding with regard to the ultimate matter in dispute, but rather only that a particular position or argument asserted by the party in the prior proceeding was accepted by the court."  Huddleston v. Commissioner, 100 T.C. 17, 26 (1993).

[9]Both the Commissioner and Mr. Maynard agree to this finding in their respective briefs.

prevent us from applying the doctrine of judicial estoppel. Accordingly, we hold that respondent is judicially estopped from claiming that the payments to Mr. Maynard were not fees for his consulting services. It follows that petitioner is entitled to a deduction for the $52,999.50.

Petitioner claimed a deduction in the amount of $256.16 for expenses incurred in moving Renata's possessions from New Mexico to California. Petitioner also claimed a deduction in the amount of $248 for an airline ticket to Albuquerque, New Mexico, so that she could assist in moving Renata and Renata's daughter. In addition, petitioner claimed a deduction in the amount of $48.83 for a room at the Geronimo Motel in Flagstaff, Arizona, where the three of them stayed on their way to California. Renata had wanted to return to California, but had no money. Petitioner wanted Renata to work for her, and after moving to California in 1989, Renata went to work for petitioner's business as a translator and a job developer.

In general, where an expenditure is primarily associated with business purposes, and personal benefit is distinctly secondary and incidental, the expenditure may be deducted under section 162. International Artists, Ltd. v. Commissioner, 55 T.C. 94, 104 (1970); Sanitary Farms Dairy, Inc. v. Commissioner, 25 T.C. 463, 467-468 (1955). Conversely, if an expenditure is primarily motivated by personal considerations, no deduction will be allowed. Henry v. Commissioner, 36 T.C. 879, 884 (1961); Larrabee v.

Commissioner, 33 T.C. 838, 841-843 (1960).  While we agree that petitioner wanted her daughter to come to California and work for her, petitioner has failed to establish that the moving expenses were incurred primarily for business purposes and that personal considerations were distinctly secondary.  We, therefore, uphold respondent's disallowance of any deduction for moving expenses.

Petitioner claimed a deduction in the amount of $399.88 for payment of a deposit and the first month's rent for an apartment for Renata in California.  Petitioner contends that these expenditures were an agreed upon condition of Renata's employment.  Renata was barely able to pay her last month's rent and had no money to rent an apartment in California.  Petitioner contends that these expenditures were therefore necessary to facilitate Renata's relocation to California and her employment with petitioner.  Petitioner has failed to establish that these expenditures were incurred primarily for business reasons and not primarily motivated by personal considerations, and we uphold respondent's disallowance of a deduction for them.  Henry v. Commissioner, supra; Larrabee v. Commissioner, supra.

Petitioner claimed a deduction for a check in the amount of $231 payable to Maynard & McDonald and for a check in the amount of $376.64 payable to Gold Country Financial, Inc.  Petitioner argues that the expenditures were for health insurance for Renata, which petitioner contends was an agreed upon condition of Renata's employment.  The check written to Gold Country Financial, Inc.,

bears the notation "Insurance". However, petitioner did not offer or provide health insurance to any other employee. Moreover, petitioner has provided no evidence that a check written to Maynard & McDonald substantiates an employee health insurance expense. We find that petitioner has failed to establish that these expenditures were incurred primarily for business reasons. Henry v. Commissioner, supra; Larrabee v. Commissioner, supra.

Petitioner claimed a deduction for a check in the amount of $200 payable to Renata. Petitioner contends that the check represented reimbursement of mileage incurred by her employee. The check bears the notation "Mileage 11/29-12/15/89". However, it was not petitioner's practice to reimburse employees for mileage in a separate check. Instead, employees reported mileage on their biweekly time sheets and were reimbursed in their regular pay checks. This practice applied to Renata as well. Petitioner has provided no credible evidence to explain why this particular reimbursement was handled out of the ordinary course. Accordingly, we uphold respondent's disallowance of this deduction.

Petitioner claimed a deduction for payments of $1,100 and $500 to Florin Road Nissan as a downpayment for a car for Renata. Petitioner testified that it was necessary for Renata to travel as part of her job responsibilities. Petitioner further testified that after Renata had been working for a few weeks, her car failed, and petitioner agreed to help Renata purchase a new car to facilitate her business-related travel. Petitioner handled the

expenditure as an advance against Renata's mileage reimbursement. However, as noted above, shortly after making the downpayment for the car, petitioner wrote a check to Renata for $200, which she claimed was for mileage reimbursement. We are not required to accept petitioner's inconsistent and self-serving testimony as gospel. Tokarski v. Commissioner, 87 T.C. at 77. We, therefore, sustain respondent's determination with respect to the automobile expenditures.

Petitioner claimed a deduction for a check in the amount of $343.75 made payable to Rich, Fuidge, Morris & Sanbrook. The only evidence that petitioner offered to substantiate the business purpose for this expenditure was her general statement that the amount was paid for legal fees related to her business.[10] We do not think that such a general statement is sufficient "to endow * * * [the expenditure] with a business purpose." Ferrer v. Commissioner, 50 T.C. 177, 185 (1968), affd. 409 F.2d 1359 (2d Cir. 1969). Accordingly, the deduction for legal fees is disallowed.

---

[10]After petitioner testified that Rich, Fuidge, Morris & Sanbrook was the name of a law firm in Marysville, California, she testified as follows:

Q    And did you pay them $343.75?
A    Yes.
Q    And was that for business or personal?
A    It was legal fees. Business.
Q    Legal fees related to what?
A    Business.
Q    Do you remember specifically what business aspect it was paid for?
A    I--I talked about my business in general. I don't recall the specific.

Petitioner also claimed certain travel expense deductions for business-related travel and automobile expense deductions, which respondent has disallowed. Section 162(a)(2) allows a deduction for all ordinary and necessary travel expenses paid by a taxpayer during the taxable year while traveling away from home in pursuit of a trade or business. A travel expense deduction is disallowed if the taxpayer does not satisfy the substantiation requirements of section 274(d) through either adequate records or the taxpayer's own detailed statement that is corroborated by sufficient evidence. Section 274(d) also applies to listed property, which includes any passenger automobile. Secs. 274(d)(4), 280F(d)(4)(A)(i). At a minimum, the taxpayer must substantiate: (1) The amount of the expense, (2) the time and place such expense was incurred, (3) the business purpose of the expense, and (4) the business relationship to the taxpayer of any persons entertained. Sec. 274(d).

The regulations further clarify the stringent substantiation requirements of section 274. A taxpayer generally must substantiate each expenditure by producing (1) adequate records or (2) sufficient evidence to corroborate his or her own statement. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985). The "adequate records" standard requires that a taxpayer maintain an account book, diary, log, statement of expense, or other similar record that contains entries of expenditures made at or near the time of the expenditure. In addition, a taxpayer must supply documentary evidence, such as

receipts or paid bills. Sec. 1.274-5T(c)(2)(i)-(iii), Temporary Income Tax Regs., 50 Fed. Reg. 46017-46020 (Nov. 6, 1985). Alternatively, taxpayers who are unable to satisfy the adequate records requirement are still entitled to a deduction for expenses that they can substantiate with other corroborative evidence. Sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020-46021 (Nov. 6, 1985).

Petitioner claimed to have prepared a contemporaneous log or diary to record her travel, meals, and entertainment during 1989. However, petitioner refused to produce copies of these logs or diaries. Because petitioner has clearly failed to meet the adequate records requirement, we must determine whether she has sufficiently substantiated her claimed travel and automobile deductions with other corroborative evidence.

Petitioner deducted a total of $60 for parking at the Sacramento airport. The only evidence offered to substantiate these expenses was a parking receipt for $32 and petitioner's own vague testimony that these parking expenses were incurred in a business endeavor. We hold that petitioner failed to substantiate these expenditures sufficiently.

Petitioner claimed a deduction in the amount of $53.90 for a motel room. Petitioner produced a copy of a room receipt dated June 30 as evidence of this expenditure. The receipt does not bear the name or location of the motel. On brief, petitioner claimed that the expenditure was for a motel in Klamath Falls, Oregon,

which is near a small community where one of her clients resided. Petitioner points to a billing statement in that client's file, in which one line reads "Travel Time and Mileage" and is dated June 30, 1989, as corroborative evidence of the business purpose of this expenditure. We do not think that this sufficiently corroborates the time, place, and business purpose for the expenditure as required by section 274(d).

Petitioner claimed a deduction in the amount of $418 for a room at the Adobe Resort Motel in Yachats, Oregon. Petitioner introduced a credit card statement listing the expenditure. Petitioner testified that the purpose of the trip was to investigate various plans for clients. While she was there, petitioner allegedly contacted a Captain Schones and spoke to him about the prospect of her clients' working in the fishing industry. Petitioner further testified that a "majority" of the trip was for business purposes. While we think that petitioner has adequately substantiated the amount of the expense and the time and place such expense was incurred, petitioner has introduced no evidence to corroborate her testimony as to the business purpose of the trip. Accordingly, we uphold respondent's determination.

Petitioner claimed a deduction in the amount of $274, which was paid to Shingle Travel Agency for airline travel for Renata to Bakersfield, California. The check payable to Shingle Travel Agency bears the notation "Rosa Garcia Conference". Petitioner testified that the purpose of Renata's trip was to monitor a

client's progress in a rehabilitation program at a brain damage facility in Bakersfield. This testimony was corroborated in part by the testimony of Kathryn Talley, petitioner's office manager. Moreover, Renata's trip to Bakersfield was only for the day. We hold that petitioner has sufficiently substantiated the business purpose for this expenditure and, therefore, allow a deduction for it.[11]

Petitioner claimed a deduction in the amount of $193.31 for automobile expenses, with respect to the vehicle that petitioner used in her business. The only evidence introduced to substantiate this expenditure was a charge statement showing a payment to Toyota of Sacramento. There is no evidence as to the business purpose of the charge. Nor is there any evidence as to the amount of time petitioner used her automobile for business purposes, other than her vague testimony that she used it "constantly" for business purposes. Accordingly, we sustain respondent's disallowance of a deduction for this expenditure.

On October 19, 1989, petitioner and Mr. Maynard traveled to Guatemala. Petitioner testified that the purpose of the trip was to improve her Spanish and to become more familiar with Guatemala so that she could place clients there. Petitioner further testified that Mr. Maynard accompanied her as a business

---

[11]Petitioner appears to have deducted this expense twice--once as a travel expense and once as cost of goods sold. We direct the parties to adjust for this in the Rule 155 computation.

consultant.  While in Guatemala, petitioner and Mr. Maynard enrolled in the Professional Spanish Language School, which met for 6 hours a day, 5 days a week.  Petitioner enrolled for 2 weeks, and Mr. Maynard enrolled for 4 weeks.  Petitioner returned from Guatemala on November 7, 1989, and Mr. Maynard returned on November 18, 1989.

When a taxpayer's travel takes her outside the United States, section 274(c) requires an allocation of all expenses in addition to the other substantiation requirements.  No deduction is allowed for those expenses that are not allocable to the taxpayer's trade or business.  Sec. 274(c)(1).  Such allocation is not required, however, if the travel does not exceed 1 week, or the amount of time allocated to nonbusiness activities is less than 25 percent of the total travel time.  Sec. 274(c)(2).

Furthermore, when a taxpayer's spouse accompanies her on a business trip, expenses attributable to his travel are not deductible unless the taxpayer adequately shows that the spouse's presence on the trip has a bona fide business purpose other than the performance of some incidental service.  Sec. 1.162-2(c), Income Tax Regs.  The spouse must provide substantial services that are directly and primarily related to the carrying on of the taxpayer's business.  Weatherford v. United States, 418 F.2d 895, 897 (9th Cir. 1969).  The court in Weatherford disallowed a deduction for the traveling expenses of a wife who did not work on her husband's wheat farm and who had no specific role in connection

with the farm other than discussing business matters with her husband.  Id.  Similarly, in the present case, petitioner did not show that Mr. Maynard had a specific role in connection with her business.

With respect to the trip to Guatemala, petitioner deducted $96.09, which she paid to the Hotel Del Lago in Guatemala. Petitioner introduced a charge statement listing the charges to this hotel in order to substantiate the expenditures.  Petitioner also deducted $15.00, which she paid to the Hotel Sol-Mor in Guatemala.  Petitioner introduced a receipt from the hotel that was made out to Mr. Maynard and reflected the price of the room in quetzals.[12]  Moreover, petitioner deducted $1,124 for the airline tickets to Guatemala for Mr. Maynard and herself, for which she introduced boarding passes and Mr. Maynard's airline ticket.

Not only has petitioner failed to allocate her foreign travel expenses between business and nonbusiness as required by section 274(c), but petitioner has also failed to show that Mr. Maynard's presence on the trip to Guatemala had a bona fide business purpose, see sec. 1.162-2(c), Income Tax Regs.  Accordingly, we sustain respondent's disallowance of a deduction for petitioner's foreign traveling expenses.

---

[12]The quetzal is the basic unit of currency in Guatemala. The receipt reflected an amount due of 46.80 quetzals. Petitioner deducted an equivalent amount in U.S. dollars. Respondent has not challenged petitioner's exchange rate computation; therefore, we will accept it for purposes of deciding this issue.

In addition to her deductions for travel expenditures, petitioner deducted $252 for the Spanish classes that Mr. Maynard took while in Guatemala,[13] and $132.60 for parking at the airport in San Francisco during her trip to Guatemala.  We find that petitioner has not introduced adequate evidence to corroborate her testimony as to the business purpose for these expenditures.

Charitable Contribution Deduction

Next, we must determine whether petitioner is entitled to a deduction for charitable contributions in the amount of $924. Petitioner testified that she contributed "Approximately $1,000 in cash" to the Roseville Church of Christ in addition to the amount that she had already substantiated by canceled checks.  Petitioner claimed that she made weekly cash contributions in addition to her contributions by check, because she did not want the church to know exactly how much she was giving.

Section 1.170A-13(a), Income Tax Regs., provides certain recordkeeping requirements for charitable contributions:

> (1) In general.  If a taxpayer makes a charitable contribution of money in a taxable year beginning after December 31, 1982, the taxpayer shall maintain for each contribution one of the following:
>
> (i) A cancelled check.
> (ii) A receipt from the donee charitable organization showing the name of the donee, the date of the contribution, and the amount of the contribution.

_____

[13]Respondent has conceded that the cost of petitioner's Spanish classes is a deductible expense.

* * *

(iii) In the absence of a canceled check or receipt from the donee charitable organization, other reliable written records showing the name of the donee, the date of the contribution, and the amount of the contribution.

Petitioner provided no written evidence of her contributions.  We, therefore, sustain respondent's determination disallowing petitioner's charitable deductions.

Addition to Tax - Accuracy Related Penalty

The final issue for decision is whether petitioner is liable for the accuracy-related penalty for negligence or substantial understatement of income tax under section 6662(a).  Section 6662 imposes an addition to tax equal to 20 percent of the portion of the underpayment that is attributable to (1) negligence or disregard of rules or regulations, or (2) substantial understatement of income tax.  Sec. 6662(a), (b)(1), (2).

The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and the term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  Negligence is defined as the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.  McGee v. Commissioner, 979 F.2d 66, 71 (5th Cir. 1992), affg. T.C. Memo. 1991-510; Marcello v. Commissioner, 380 F.2d 499, 506-507 (5th Cir. 1967), affg. in part and remanding in

part 43 T.C. 168 (1964); <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985).

There is a substantial understatement of income tax if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the amount required to be shown on the tax return, or $5,000. Sec. 6662(d)(1)(A). The amount of the understatement is reduced, however, if there was substantial authority for the taxpayer's treatment of the item. Sec. 6662(d)(2)(B). In order to satisfy the substantial authority standard, petitioner must show that the weight of authorities supporting her position is substantial in relation to those supporting a contrary position. <u>Antonides v. Commissioner</u>, 91 T.C. 686, 702 (1988), affd. 893 F.2d 656 (4th Cir. 1990); sec. 1.6661-3(b)(1), Income Tax Regs.

Petitioner has the burden of proving that respondent's determination of the accuracy-related penalty is in error. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Petitioner conceded that she is liable for the accuracy-related penalty with respect to those items that she conceded at or before trial and on brief. With respect to those items still in issue, petitioner simply claims that her positions were supported by substantial authorities. However, petitioner provided no evidence to show that she was not negligent, and she pointed to no authorities to support her position and bring her within the exception to the definition of substantial understatement. Accordingly, we sustain

respondent's determination that petitioner is liable for the addition to tax under section 6662(a).

<u>Decision will be entered under Rule 155</u>.