T.C. Summary Opinion 2004-87

UNITED STATES TAX COURT

TOBIAS G. OGU, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7676-03S.                    Filed June 30, 2004.

Tobias G. Ogu, pro se.

<u>David E. Whitcomb</u>, for respondent.

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 1999 and 2000, the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

Respondent determined deficiencies in petitioner's Federal income taxes and accuracy-related penalties for 1999 and 2000 as follows:

| Year | Deficiency | Accuracy-Related Penalty Section 6662(a) |
|------|-----------|-------------------------------------------|
| 1999 | $26,424 | $5,285 |
| 2000 | 23,569 | 4,714 |

After concessions by respondent,[2] the issues for decision by the Court are as follows: (1) Whether petitioner is entitled to various Schedule C deductions in 1999 and 2000; (2) whether petitioner is entitled to head-of-household filing status in 1999 and 2000; (3) whether petitioner is entitled to earned income credits in 1999 and 2000; (4) whether petitioner received proceeds from the sale of stock in 2000; and (5) whether petitioner is liable for the accuracy-related penalties under section 6662(a) for 1999 and 2000.

In addition, there are two computational matters, the resolution of which is solely dependent on our disposition of the disputed issue involving petitioner's Schedules C.[3]

---

[2] At trial, respondent conceded: (1) For 1999 and 2000, petitioner is entitled to claim his son as a dependent; (2) for 1999, petitioner is entitled to a bad debt deduction on Schedule C in the amount of $7,580; and (3) for 2000, petitioner is entitled to the cost of goods sold and the deduction for "other expenses--rent" as claimed on his Schedule C.

[3] The computational matters, each of which involves both of the taxable years in issue, are: (1) The amount of self-employment tax under sec. 1401; and (2) the amount of the self-

(continued...)

I.  Background

Some of the facts have been stipulated, and they are so found.  At the time that the petition was filed, petitioner resided in Houston, Texas.

A.  Petitioner's Occupation

Petitioner filed a Form 1040, U.S. Individual Income Tax Return, for 1999.  At the bottom of page 2 of the Form 1040, petitioner listed his occupation as "consultant" and his firm as Americana Business Consultants.

Petitioner filed a Form 1040, U.S. Individual Income Tax Return, for 2000.  At the bottom of page 2 of the Form 1040, petitioner listed his occupation as "accountant" and his firm as Creative Accountants.

At trial, petitioner testified that he has a college degree in business administration and that he regards himself as an accountant both by education and profession.

B.  Petitioner's Schedules C

Petitioner attached a Schedule C, Profit or Loss From Business (Sole Proprietorship), to each of his returns for 1999 and 2000.  On each Schedule C, petitioner identified his business name as Americana Business Consultants, his principal business or

_____

[3](...continued)
employment tax deduction under sec. 164(f).

profession as computer and software, and his business activity code as 443120, signifying a computer and software store.[4]

On his Schedule C for 1999, petitioner claimed various deductions. As relevant to the issues for decision, those deductions were as follows:

| | |
|---|---|
| Other/Depreciation | $15,743 |
| Other/EDI fee, advertising, telephone, etc. | 9,113 |
| Other/Overseas expenses | 24,720 |
| Other/Trade mission | 11,900 |

On his Schedule C for 2000, petitioner claimed various deductions. As relevant to the issues for decision, those deductions were as follows:

| | |
|---|---|
| Depreciation | $4,157 |
| Legal/Professional | 3,270 |
| Other/Used file cabinets, chairs, and tables | 7,840 |
| Other/Overseas rent | 3,900 |
| Other/Overseas expenses | 7,870 |
| Other/Overseas wages | 16,000 |
| Other/Overseas office | 1,680 |
| Other/Trade mission | 6,975 |

Petitioner did not attach to either of his returns for 1999 or 2000 a Form 4562, Depreciation and Amortization (Including Information on Listed Property), or other depreciation schedule.

---

[4] At trial, petitioner testified that Creative Accountants, see supra p. 3, was a "dba" of Americana Business Consultants. According to petitioner, "we divided our business for people to identify what kind of business we are doing".

Similarly, petitioner did not attach to either of his returns an election to expense property under section 179.[5]

C. Petitioner's "Trade Missions" to Nigeria

On his Schedule C for 1999, petitioner claimed a deduction for "trade mission" in the amount of $11,900. In this regard, petitioner claims to have gone to Nigeria on a "trade mission" from December 22, 1999, to January 7, 2000, and to have incurred the following "general expenses":

| Item | Amount |
|------|--------|
| Air ticket | $1,620 |
| Excess luggage | 875 |
| Sealing tape | 5 |
| Yellow Cab taxi | 65 |
| ABC Transport to Owerri | 150 |
| Domino Paramount Hotel--3 days | 225 |
| Taxi to tourist guest house | 45 |
| Tourist guest house--7 days | 665 |
| Hotel conference hall | 570 |
| Banners and signs | 455 |
| Publications and Supplies | 1,650 |
| Car rental with chauffeur--8 days | 540 |
| Gas/petrol | 490 |
| Radio advertisement | 500 |
| Lunch for the guests | 1,950 |
| Domino Paramount Hotel--4 days | 300 |
| Messengers--hired 5 people | 750 |
| Meal and entertainment | 1,045 |
| Total Expenses | 11,900 |

The record does not include an itinerary, passenger receipt, boarding passes, credit card receipt, or other documentary evidence demonstrating that an airline ticket was purchased or,

---

[5] A taxpayer wishing to expense property would typically make the election using Part I, Election To Expense Certain Tangible Property (Section 179), of Form 4562, Depreciation and Amortization (Including Information on Listed Property).

if one was, the cost thereof or the flight itinerary. Regarding the other enumerated expenses, petitioner claims to have paid in cash; he also claims that in Nigeria hotels, restaurants, and other purveyors of goods and services do not provide receipts.[6]

On his Schedule C for 2000, petitioner claimed a deduction for "trade mission" in the amount of $6,975. In this regard, petitioner claims to have gone to Nigeria on another "trade mission" from December 25, 2000, to January 13, 2001. The record does not include any schedule of expenses that petitioner claims to have incurred. The record does include a flight itinerary issued by a travel agency in Houston calling for the payment of $1,930 and a passenger receipt showing a fare of "BULK" and tax of $88.73. No other documentation exists in the record; petitioner again claims to have paid his expenses in Nigeria in cash.

At trial, petitioner testified that he went to Nigeria on "trade missions" during the holiday season not because his family was there (see infra I.D., note 8) but because:

> In Nigeria business is mostly done during December
> time. Done during December time, because at that time
> you have gifts to give to people. They're happy. So
> this is the only time they can talk to you.

---

[6] According to petitioner, "Everything in Nigeria is cash" and "there is nothing like a receipt."

D.  Petitioner's Nigerian Corporation

The record in this case includes a document purporting to be the Articles of Association of Americana Business Consultants (Nigeria) Limited, a Nigerian corporation incorporated on January 19, 2000.[7]  This document identifies petitioner as holding 500,000, or one-half, of the 1 million shares of the corporation, and five of petitioner's relatives as each holding 100,000 shares.  Listed among the five relatives is Chinedu N. Ogu, petitioner's son, whose position in the corporation is identified as "Director-Business Strategist".[8]  Petitioner's position in the corporation is identified as "Chairman/Chief Executive officer".

At trial, petitioner testified that "they told me that for them to deal with me, that I must come here and incorporate by Nigerian law" and:

> they will not allow you to do business in Nigeria, if it is overseas dominated.  You must show that the citizens own the business.  Citizens that reside over there, they live over there.  Nigerians own the business.

---

[7]  Although Americana Business Consultants (Nigeria) Limited was purportedly incorporated on Jan. 19, 2000, petitioner's "Financial Statement" for the calendar year 1999 lists a "general administrative expense" of $29 as having been incurred in August 1999 for "Articles of Association--ABC Nig Ltd".

[8]  Petitioner's son, Chinedu N. Ogu, was born in 1986 and therefore turned 13 in 1999.  See infra p. 10.  The other four relatives are petitioner's mother, two brothers, and sister, all of whom live in Nigeria.

E.  Petitioner's "Overseas Expenses" in Nigeria

On Part V of his Schedule C for 1999, petitioner claimed under the category of "Other Expenses" a deduction for overseas expenses in the amount of $24,720.  Petitioner did not break this amount into constituent parts, but he did describe the total as "overseas commission, shipping, office supplies, etc".

On Part V of his Schedule C for 2000, petitioner claimed under the category of "Other Expenses" deductions for overseas expenses as follows:

| Deduction | Amount |
|---|---|
| Overseas rent | $3,900 |
| Overseas expenses | 7,870 |
| Overseas wages | 16,000 |
| Overseas office | 1,680 |

The deductions for "overseas expenses" in 1999 and 2000 appear to relate to Americana Business Consultants (Nigeria) Limited.

F.  Petitioner's Involvement in State Court Litigation

In September 1999, an individual by the name of Francis Iheanacho (Mr. Iheanacho) commenced a civil action (Cause No. 1999-47585) in the District Court of Harris County (Houston), Texas, against petitioner for libel and intentional infliction of emotional distress.  Mr. Iheanacho named petitioner both individually and as agent and officer of Mbaise Cultural Union, Inc., an organization described by petitioner as "a Houston based

charity non-profit tax-exempt organization".[9]  Mr. Iheanacho also named Mbaise Cultural Union as a defendant on the basis of respondeat superior.

In his complaint, Mr. Iheanacho alleged that petitioner published defamatory statements suggesting, inter alia, that Mr. Iheanacho "was guilty of criminal activity; theft, welfare fraud, misuse of official information, attempt[ed] aggravated assault, and professional impropriety."  Mr. Iheanacho further alleged that petitioner published such statements in letters on petitioner's personal stationery sent to the Texas Department of Human Services and in a "Dear brothers and sisters" letter sent to members of Mbaise Cultural Union.[10]

---

[9]  It would appear that petitioner and Mr. Iheanacho were both members of, or otherwise associated with, Mbaise Cultural Union.

[10]  Mr. Iheanacho appended to his complaint as exhibits three of petitioner's letters.  One of petitioner's letters was captioned "Use of Deadly Force Authored By Francis Iheanacho", the salutation and opening paragraph of which read as follows:

Dear Brothers and sisters:

I write to inform you that on May 31, 1998, after Mbaise Cultural Union meeting, Francis Iheanacho drove his small pleasure car with reckless abandon with the intention to run over Ezeji T. Ogu [petitioner].  This incident was witnessed by at least five Mbaise people. What prompted Francis Iheanacho to use deadly force against harmless and innocent Ezeji?  This is a question only Francis Iheanacho can answer.  This incident has added another chapter to Francis Iheanacho's pattern of deception and uncivilized behavior in Mbaise Cultural Union.

In November 2000, Mbaise Cultural Union commenced a civil action (Cause No. 2000-57938) in the District Court of Harris County (Houston), Texas, against petitioner and another individual.  In its complaint, Mbaise Cultural Union described petitioner as "a self appointed public relations officer" and alleged, inter alia, that petitioner "failed to use his best efforts to achieve the corporate and business purposes of MBAISE CULTURAL UNION."

In March 2000, petitioner commenced a civil action (Cause No. 2000-15808) in the District Court of Harris County (Houston), Texas, against Dr. Tim Oparaji.  The record in the present case contains no information regarding the nature of Cause No. 2000-15808.

On his Schedule C for 1999, petitioner did not claim any deduction for legal and professional services.  In contrast, on his Schedule C for 2000, petitioner claimed a deduction for legal and professional services in the amount of $3,270.

G.  Petitioner's Immediate Family

During 1999 and 2000, petitioner was unmarried.  However, he was formerly married to Sharon J. Carter (Ms. Carter) and had two children with her, a son, Chinedu N. Ogu (Chinedu), who was born

on September 21, 1986, and a daughter, Sarah C. Ogu, who was born on August 8, 1990.[11]

Petitioner and Ms. Carter were divorced in December 1996 by the District Court of Harris County (Houston), Texas. In its Final Decree of Divorce, the District Court appointed petitioner and Ms. Carter as Joint Managing Conservators of their offspring. Although both petitioner and Ms. Carter were granted "the right to have physical possession of the child", only Ms. Carter was granted the right "to establish the legal residence of the child". Petitioner was also ordered to pay child support on a semimonthly basis.

During each of the taxable years in issue, Chinedu lived with his mother for more than half of the year.

H. **Petitioner's Reported Tax Liabilities and Earned Income Credits**

On his Form 1040 for 1999, petitioner reported "0.00" tax on line 40 and self-employment tax of $1,213 on line 50, for a total reported tax liability of $1,213. Petitioner then claimed an earned income credit of $2,312 and, ultimately, a refund of $1,099 (i.e., $2,312 less $1,213).

On his Form 1040 for 2000, petitioner reported "0.00" tax on line 40 and self-employment tax of $1,762 on line 52, for a total reported tax liability of $1,762. Petitioner then claimed an

---

[11] Petitioner's daughter is not involved in any of the issues in this case.

earned income credit of $2,353 and, ultimately, a refund of $591 (i.e., $2,353 less $1,762).

In support of his claims of the earned income credit for 1999 and 2000, petitioner attached to his return for each of those years a Schedule EIC, Earned Income Credit/Qualifying Child Information.  On each Schedule EIC, petitioner claimed his son, Chinedu N. Ogu, as a qualifying child and represented that Chinedu lived with him for the entire year.

I.  Respondent's Notice of Deficiency

For 1999, and as relevant to the issues for decision, respondent disallowed the following deductions claimed by petitioner as "other expenses" on Part V of his Schedule C:

| Deduction | Amount Claimed | Amount Allowed | Amount Disallowed |
|---|---|---|---|
| Depreciation | $15,743 | --- | $15,743 |
| EDI fee, advertising, telephone, etc. | 9,113 | $1,489 | 7,624 |
| Trade mission | 11,900 | --- | 11,900 |
| Overseas expenses | 24,720 | --- | 24,720 |

For 2000, and as relevant to the issues for decision, respondent disallowed the following deductions claimed by petitioner as "expenses" on Part II or as "other expenses" on Part V of his Schedule C:

| Deduction | Amount Claimed | Amount Allowed | Amount Disallowed |
|---|---|---|---|
| Depreciation | $4,157 | --- | $4,157 |
| Legal/Professional | 3,270 | --- | 3,270 |
| Other/Used file cabinets, chairs, and tables | 7,840 | --- | 7,840 |
| Trade mission | 6,975 | --- | 6,975 |
| Overseas rent | 3,900 | --- | 3,900 |
| Overseas expenses | 7,870 | --- | 7,870 |
| Overseas wages | 16,000 | --- | 16,000 |
| Overseas office | 1,680 | --- | 1,680 |

For 1999 and 2000, respondent also changed petitioner's filing status from head of household to single and disallowed the earned income credit. For 2000, respondent determined that petitioner received, but failed to report, proceeds of $42 from the sale of stock. Finally, respondent determined that petitioner is liable for the accuracy-related penalty under section 6662(a) for 1999 and 2000.

## II. Discussion

### A. Burden of Proof

Historically, and as a general rule, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a). This principle was established by the United States Supreme Court as early as 1933 and was reaffirmed by the Supreme Court as recently as 1992. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).

However, the foregoing rule is subject to the provisions of section 7491, which was enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206,

sec. 3001(c), 112 Stat. 727.  By virtue of section 7491(a), the burden of proof may, under certain circumstances, be shifted to the Commissioner.

In the present case, section 7491(a) does not operate to place the burden of proof on respondent because: (1) Petitioner did not allege, much less demonstrate, that section 7491 is applicable; (2) petitioner did not introduce credible evidence with respect to any factual issue relevant to ascertaining his liability; (3) petitioner did not comply with the requirements under the Internal Revenue Code to substantiate his deductions; and (4) petitioner did not maintain all records required under the Internal Revenue Code.  See Higbee v. Commissioner, 116 T.C. 438 (2001).  In addition, it is open to question whether petitioner cooperated, within the meaning of section 7491(a)(2)(B), with respondent's agents.

In view of the foregoing, we proceed with our analysis on the basis that petitioner bears the burden of proving that respondent's deficiency determinations are erroneous.

B.  Issue 1.  Schedule C Deductions

1. General Principles

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he or she is entitled to any deduction claimed.  Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); see INDOPCO, Inc. v. Commissioner, supra; Welch v. Helvering, supra.  This includes the burden of substantiation.

Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

In addition, the Court is not bound to accept as gospel the unverified and undocumented testimony of a taxpayer. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Hradesky v. Commissioner, supra. Even when a taxpayer's testimony is uncontroverted, we are not required to accept it if it is improbable, unreasonable, or questionable. Lovell & Hart, Inc. v. Commissioner, 456 F.2d 145, 148 (6th Cir. 1972), affg. T.C. Memo. 1970-335; MacGuire v. Commissioner, 450 F.2d 1239, 1244 (5th Cir. 1971), affg. T.C. Memo. 1970-89; Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992).[12]

We also observe that section 6001 and the regulations promulgated thereunder require taxpayers to maintain records sufficient to permit verification of income and expenses. See sec. 1.6001-1(a), Income Tax Regs. As a general rule, if, in the absence of such records, a taxpayer provides sufficient evidence that the taxpayer has incurred a deductible expense, but the taxpayer is unable to adequately substantiate the amount of the deduction to which he or she is otherwise entitled, the Court may estimate the amount of such expense and allow the deduction to

---

[12] See also Diaz v. Commissioner, 58 T.C. 560, 564 (1972) (describing "the ultimate task of a trier of the facts--the distillation of truth from falsehood which is the daily grist of judicial life"); Kropp v. Commissioner, T.C. Memo. 2000-148 ("As a trier of fact, it is our duty to listen to the testimony, observe the demeanor of the witnesses, weigh the evidence, and determine what we believe.").

that extent.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  However, in order for the Court to estimate the amount of an expense, we must have some basis upon which an estimate may be made.  Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).  Without such a basis, any allowance would amount to unguided largesse.  Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

In the case of certain expenses, section 274(d) overrides the so-called Cohan doctrine.  Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  Specifically, section 274(d) provides that no deduction is allowable either for travel, including meals while away from home, or with respect to listed property as defined in section 280F(d)(4), unless the deduction is substantiated in accordance with the strict substantiation requirements of section 274(d) and the regulations promulgated thereunder.  Included in the definition of listed property in section 280F(d)(4) is any passenger automobile, any computer or peripheral equipment, and any cellular telephone or other similar telecommunications equipment.  Sec. 280F(d)(4)(A)(i), (iv), (v).

Thus, under section 274(d), no deduction is allowable for expenses incurred either for travel or in respect of listed property such as a passenger automobile, a computer or peripheral equipment, or a cellular telephone or other similar telecommunications equipment, on the basis of any approximation

or the unsupported testimony of the taxpayer.  E.g., <u>Golden v.</u>
<u>Commissioner</u>, T.C. Memo. 1993-602.  In other words, in the
absence of adequate records or sufficient evidence corroborating
the taxpayer's own statement, any deduction that is subject to
the stringent substantiation requirements of section 274(d) is
proscribed.  These stringent substantiation requirements are
designed to encourage taxpayers to maintain records, together
with documentary evidence substantiating each element of the
expense to be deducted.  Sec. 1.274-5T(c)(1), Temporary Income
Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

In addition to the strict substantiation requirements of
section 274(d), a deduction for foreign travel is subject to the
allocation requirements of section 274(c).  E.g., <u>Shackelford v.</u>
<u>Commissioner</u>, T.C. Memo. 1995-484; <u>Hilton v. Commissioner</u>, T.C.
Memo. 1990-11.  Thus, section 274(c) generally requires the
proration of foreign travel expenses between business and
nonbusiness expenses.

With the foregoing general principles in mind, we turn now
to the specific Schedule C deductions in issue.

   2.  <u>Depreciation, Office Furnishings, EDI Fee, etc.</u>

On his Schedule C for 1999, petitioner claimed a deduction
for "EDI fee, advertising, telephone, etc." in the amount of
$9,113; of this amount, respondent allowed $1,489 and disallowed
the balance.  On his Schedule C for 2000, petitioner claimed a
deduction for used file cabinets, chairs, and tables in the

amount of $7,840; respondent disallowed the deduction in its entirety. Finally, on his Schedules C for 1999 and 2000, petitioner claimed depreciation deductions in the amounts of $15,743 and $4,157, respectively; respondent disallowed these deductions in their entirety.

Insofar as the deduction for "EDI fee, advertising, telephone, etc." is concerned, there is nothing in the record that would permit us to allow any amount greater than that already allowed by respondent in the notice of deficiency. See Williams v. United States, supra at 560.

Insofar as the used file cabinets, chairs, and tables are concerned, the cost of such office furnishings is generally chargeable to capital account and then recovered through an annual allowance for depreciation. See secs. 167 and 168. However, such cost may be expensed pursuant to section 179 if the requirements of that section are satisfied. However, such cost may not be expensed in the absence of an election. Sec. 179(c); Visin v. Commissioner, T.C. Memo. 2003-246; sec. 1.179-5, Income Tax Regs.

In the present case, petitioner failed to make any election under section 179.[13] That being the case, petitioner may not

---

[13] The election would typically be made using Part I "Election To Expense Certain Tangible Property (Section 179)" of Form 4562. Petitioner did not attach Form 4562 to his return, nor did he otherwise make an election under sec. 179.

expense the cost of used file cabinets, chairs, and tables. Nor is petitioner entitled to any depreciation allowance for such property. Petitioner failed to prove (e.g., by producing a bill of sale) that he acquired any such property; assuming that he did, petitioner failed to prove (e.g., by producing a canceled check or credit card receipt or statement) its cost.

Finally, we consider the depreciation deductions claimed by petitioner on his Schedules C for 1999 and 2000 in the amounts of $15,743 and $4,157, respectively. Here our analysis is hampered by the fact that the record does not include a depreciation schedule for either of the years in issue.[14] Nevertheless, we understand that depreciation was claimed principally in respect of one or two automobiles and several pieces of computer equipment.

As we understand it, petitioner claims depreciation on a "brand new" 1999 Toyota Camry that he acquired in May 2000, allegedly for $22,500.[15] Although the record includes a "Bill of Sale" dated May 2, 2000, there is a reference on petitioner's "Balance Sheet" for the calendar year 1999 to "Automobile--1999

---

[14] Although the record includes a "Depreciation Worksheet" for 199<u>7</u>, it would appear that the property listed therein would have been fully depreciated before 199<u>9</u>.

[15] The Texas Certificate of Title describes the Camry as "rebuilt salvage" and as having 19,840 miles on the odometer at the time that the title was transferred to petitioner.
At trial, petitioner testified that "I was offered $70,000" for the car.

Camery [sic] (New) $19,850.00". There is a prior entry on that same "Balance Sheet" for an unidentified automobile, as follows:

| | | |
|---|---|---|
| Automobile | 1,500 | |
| Accumulated Depreciation | <u>1,000</u> | 500 |

Petitioner contends that he used the 1999 Toyota Camry "almost 100 percent" of the time ("well, maybe 90 percent" of the time) for business, and that he used a second "old car" automobile for personal purposes (e.g., to transport his son during visitations). However, petitioner failed to support such contention; indeed, petitioner failed to produce (and as we understand, failed to maintain) records required by section 274(d) related to the use of any automobile. As previously discussed, such records are essential for any deduction claimed in respect of listed property such as a passenger automobile.

Similarly, petitioner failed to produce (and as we understand, failed to maintain) records required by section 274(d) related to the use of any computer or peripheral equipment. Again, such records are essential for any deduction claimed in respect of listed property such as a computer or peripheral equipment.

Finally, petitioner should understand: The fact that a taxpayer claims a deduction on an income tax return is not sufficient to substantiate the deduction claimed on that return. <u>Wilkinson v. Commissioner</u>, 71 T.C. 633, 639 (1979); <u>Roberts v.</u>

Commissioner, 62 T.C. 834, 837 (1974).  Rather, a tax return is merely a statement of the taxpayer's claim; the return is not presumed to be correct.  Wilkinson v. Commissioner, supra at 639; Roberts v. Commissioner, supra at 837; see also Seaboard Commercial Corp. v. Commissioner, 28 T.C. 1034, 1051 (1957) (a taxpayer's income tax return is a self-serving declaration that may not be accepted as proof of the deduction or exclusion claimed by the taxpayer); Halle v. Commissioner, 7 T.C. 245 (1946) (a taxpayer's return is not self-proving as to the truth of its contents), affd. 175 F.2d 500 (2d Cir. 1949); Swayne Lumber Co. v. Commissioner, 25 B.T.A. 335, 339-340 (1932) (an entry on a tax return is not evidence that an expenditure was actually made).  Much the same may be said about a taxpayer's bookkeeping entries and self-generated financial statements.  See Doyle v. Mitchell Bros. Co., 247 U.S. 179 (1918); Geiger v. Commissioner, 440 F.2d 688, 669 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159.

    In view of the foregoing, we hold for respondent on this issue.

### 3. "Trade Missions", Overseas Expenses

On his Schedules C for 1999 and 2000, petitioner claimed deductions for "trade missions" in the amounts of $11,900 and $6,975, respectively. Also on his Schedules C for 1999 and 2000, petitioner claimed various overseas expenses in the aggregate amounts of $24,720 and $29,450, respectively.[16]

To the extent that the strict substantiation rules of section 274(d) apply, petitioner has not adequately substantiated any of the foregoing deductions. See sec. 274(d); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985); see also sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

To the extent that the strict substantiation rules of section 274(d) would not preclude us from estimating an appropriate allowance, any such estimate would be unfounded. See Williams v. United States, 245 F.2d at 560.

In addition to the foregoing, we are not convinced that the amounts claimed are even deductible, apart from their lack of substantiation. In this regard, the record demonstrates that shortly after petitioner returned from his first "trade mission" (December 22, 1999, to January 7, 2000), Americana Business Consultants (Nigeria) Limited, a Nigerian corporation, was incorporated. At trial, petitioner testified that he was obliged

---

[16] For 2000, the aggregate amount consists of rent of $3,900, wages of $16,000, office expenses of $1,680, and other expenses of $7,870.

to do business in Nigeria in corporate form.  The law is clear that as a general rule, a taxpayer may not deduct the expenses of another taxpayer.  Deputy v. du Pont, 308 U.S. 488 (1940); Hewett v. Commissioner, 47 T.C. 483 (1967); see Moline Props., Inc. v. Commissioner, 319 U.S. 436, 438-439 (1943) (the business of a corporation is separate and distinct from the business of its shareholders); Crook v. Commissioner, 80 T.C. 27, 33 (1983) (same), affd. without published opinion 747 F.2d 1463 (5th Cir. 1984).  Under this rule, a shareholder, even a majority or sole shareholder, may not deduct payments made by the shareholder of the corporation's expenses.  E.g., Rink v. Commissioner, 51 T.C. 746, 751 (1969).  Although there is a narrow and limited exception to this rule, see Lohrke v. Commissioner, 48 T.C. 679, 684-685 (1967), petitioner did not demonstrate that the exception to the general rule should apply in his case, see Capital Video Corp. v. Commissioner, 311 F.3d 458, 464 (1st Cir. 2002), affg. T.C. Memo. 2002-40.

In view of the foregoing, we hold for respondent on this issue.

### 4.  Legal/Professional Expenses

On his Schedule C for 2000, petitioner claimed a deduction for legal and professional services in the amount of $3,270.[17] At trial, respondent conceded that petitioner substantiated the

_____

[17]  Petitioner did not claim any deduction for legal or professional expenses on his Schedule C for 1999.

payment of legal expenses of $2,746; nevertheless, respondent continued to maintain that no portion of this amount is deductible. For his part, petitioner admitted that the deduction related to expenses incurred in connection with the State court litigation involving Mbaise Cultural Union (Cause No. 1999-47585 and Cause No. 2000-15808). See supra I.F.

Whether legal expenses are deductible as business expenses pursuant to section 162(a) or are nondeductible pursuant to section 262(a) depends on the origin and character of the claim for which the expenses were incurred and whether the claim bears a sufficient nexus to the taxpayer's business activities. See United States v. Gilmore, 372 U.S. 39 (1963). As the Supreme Court stated: "the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test". Id. at 49. In other words, "Litigation expenses are deductible if the suit against the taxpayer 'arises in connection with' or 'proximately results from' the taxpayer's business or profit-seeking activity." O'Malley v. Commissioner, 91 T.C. 352, 362 (1988) (quoting United States v. Gilmore, supra at 48). Thus, in order for petitioner's legal expenses to be deductible on his Schedule C for 2000, the origin of those legal expenses must have been rooted in Americana Business Consultants, his Schedule C business.

Having carefully read the complaint filed at Cause No. 1999-47585 and the complaint filed at Cause No. 2000-15808, we are

unable to discern any nexus, much less a sufficient nexus, between those civil actions and petitioner's business activities as proprietor of Americana Business Consultants.

In the petition filed at Cause No. 1999-47585, the plaintiff, Mr. Iheanacho, alleged that petitioner published defamatory statements and intentionally inflicted emotional distress. The facts alleged concerning such matters do not implicate petitioner's business activities. Noteworthy is the fact that Mr. Iheanacho alleged that petitioner published defamatory statements in letters on petitioner's personal stationery, which did not even reflect petitioner's business address.

In the petition filed at Cause No. 2000-15808, the plaintiff, Mbaise Cultural Union, alleged that petitioner, "a self appointed public relations officer" of the plaintiff, "failed to use his best efforts to achieve the corporate and business purposes of MBAISE CULTURAL UNION." However, there is nothing on petitioner's returns for 1999 and 2000, or otherwise in the record, to suggest that petitioner's relationship with the plaintiff was other than purely social and/or cultural.

In addition, at trial, petitioner introduced no evidence, testimonial or documentary, demonstrating a sufficient nexus between the State court litigation and his business activities. Any suggestion that petitioner's involvement with Mbaise Cultural Union was for the purpose of developing a pool of potential

clients for his computer and software business is too tenuous to be persuasive.

In view of the foregoing, we hold for respondent on this issue.

C.  Issue 2.  Filing Status

On each of his returns for 1999 and 2000, petitioner listed his filing status as head of household.  In the notice of deficiency, respondent changed petitioner's filing status to single.

As relevant herein, section 2(b)(1)(A)(i) provides that a taxpayer shall be considered a head of a household if, and only if, the taxpayer maintains as his home a household which constitutes for more than half of the taxable year the principal place of abode, as a member of such household, of a son of the taxpayer.

During each of the taxable years in issue, petitioner's son Chinedu N. Ogu lived with his mother for more than half of the year.[18]  This living arrangement was consistent with the divorce decree granting petitioner's former spouse the right "to establish the legal residence of the child".  Accordingly,

---

[18]  At trial, the following colloquy between the Court and petitioner occurred:

> THE COURT:  All right.  Did we understand you to say that most of the time he stays with the mother?

> PETITIONER:  Yes.  Most of the time he stays with the mother.  Sometimes he stays with me.

petitioner does not qualify for head of household filing status. Id. Respondent's determination is therefore sustained.

D.  Issue 3.  Earned Income Credit

On each of his returns for 1999 and 2000, petitioner claimed an earned income credit identifying his son Chinedu N. Ogu as a qualifying child.  In the notice of deficiency, respondent disallowed the earned income credit for both years.  Respondent based the disallowance on the lack of a qualifying child and on the fact that petitioner's income exceeded the maximum amount allowable to claim an earned income credit without regard to a qualifying child.

In the case of an eligible individual, section 32(a) allows an earned income credit against the individual's income tax liability.  As relevant in the first instance, an "eligible individual" is defined as an individual who has a "qualifying child" for the taxable year.  Sec. 32(c)(1)(A)(i).

As required by section 32(c)(3)(A)(ii), and as relevant herein, a "qualifying child" is the taxpayer's son who has the same principal place of abode as the taxpayer for more than half of the taxable year.

During each of the taxable years in issue, petitioner's son lived with his mother for more than half of the year.  See supra note 18.  As stated above, this living arrangement was consistent with the divorce decree granting petitioner's former spouse the

right "to establish the legal residence of the child".

Accordingly, Chinedu is not a "qualifying child" of petitioner.

An individual who does not have a "qualifying child" may also be an "eligible individual" and thereby qualify for an earned income credit. Sec. 32(c)(1)(A)(ii). However, to qualify for 1999, the individual's earned income and modified adjusted gross income must both be less than $10,200; for 2000, less than $10,380.

In view of our disposition of the Schedule C issues for 1999 and 2000, it would appear virtually certain that petitioner's earned income and modified adjusted gross income for each of those years exceed the maximum amount allowable to claim an earned income credit without regard to a "qualifying child". However, the parties should confirm this matter as part of their computation for entry of decision under Rule 155.

E.   Issue 4.  Proceeds From the Sale of Stock

In the notice of deficiency, respondent determined that petitioner received proceeds of $42 from the sale of stock in 2000.

Petitioner did not address this issue at trial; accordingly, we consider it to have been abandoned by him. See, e.g., Watson v. Commissioner, T.C. Memo. 2001-213. Respondent's determination is therefore sustained.

F.  Issue 5.  Accuracy-Related Penalty

As applicable herein, section 6662(a) imposes a 20-percent accuracy-related penalty on any underpayment of tax attributable to either (1) negligence or disregard of rules or regulations, or (2) any substantial understatement of income tax.  The term "negligence" includes any failure to make a reasonable attempt to comply with the Internal Revenue Code, and the term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  An understatement of income tax is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).  As relevant herein, an "understatement" is defined as the excess of the tax required to be shown on the return over the tax actually shown on the return.  Sec. 6662(d)(2)(A).

By virtue of section 7491(c), the Commissioner has the burden of production with respect to the liability of any individual for any penalty.  "[F]or the Commissioner to meet his burden of production, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty."  Higbee v. Commissioner, 116 T.C. at 446.  Once the Commissioner meets the burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect.  Id.  Typically, the taxpayer would be obliged to prove that he or she acted with

reasonable cause and in good faith.  Sec. 6664(c)(1); see Higbee v. Commissioner, supra at 448-449; sec. 1.6664-4(b)(1), Income Tax Regs.

This Court has held that the Commissioner may satisfy his burden of production for the accuracy-related penalty based on negligence by showing that the taxpayer failed to keep adequate books and records or to properly substantiate items in question. E.g., Higbee v. Commissioner, supra at 449.  This Court has also held that the Commissioner may satisfy his burden of production for the accuracy-related penalty based on substantial understatement of income tax by showing that the understatement on the taxpayer's return satisfies the definition of "substantial".  E.g., Janis v. Commissioner, T.C. Memo. 2004-117.

Given the minimal amount of tax reported by petitioner on his returns as compared with: (1) The magnitude of the adjustments made by respondent in the notice of deficiency, (2) the relatively modest concessions made by respondent at trial, and (3) our holdings herein on the substantive issues for decision, it would appear virtually certain that there are substantial understatements of income tax for 1999 and 2000. However, even if we were to leave that matter to the parties as part of their computation for entry of decision under Rule 155, we would hold that respondent satisfied his burden of production by showing that petitioner failed to maintain complete and

adequate books and records and to properly substantiate the items in question.  E.g., <u>Kikalos v. Commissioner</u>, T.C. Memo. 2004-82.

We also hold that petitioner failed to satisfy his burden of proof by demonstrating that he acted with reasonable cause and in good faith.  In part, we are led to this conclusion by the fact that petitioner represents himself to be an accountant having his own accounting firm, Creative Accountants, which prepares tax returns.  As an accountant, petitioner knows, or should know, that one cannot ignore the strict substantiation requirements of section 274(d) or the more general recordkeeping requirements of section 6001.  As an accountant, petitioner also knows, or should know that:  A taxpayer cannot generally deduct the expenses of another taxpayer; a taxpayer cannot deduct legal expenses if such expenses are essentially personal in nature; head-of-household filing status may not be claimed if the taxpayer does not maintain as his home a household which constitutes for more than half of the taxable year the principal place of abode, as a member of such household, of a son of the taxpayer; and, for purposes of the earned income credit, a taxpayer's son is not a "qualifying child" unless the son has the same principal place of abode as the taxpayer for more than half of the taxable year.

In view of the foregoing, we hold for respondent on this issue.

G.  <u>Conclusion</u>

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issues, as well as respondent's concessions, see <u>supra</u> note 2,

<u>Decision will be</u>

<u>entered under Rule 155.</u>