T.C. Memo. 2020-11

UNITED STATES TAX COURT

MEI PRODUCTIONS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13059-16L.                    Filed January 14, 2020.

Steven R. Mather and Lydia B. Turanchik, for petitioner.

Michael W. Berwind and Donna F. Herbert, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, Judge:  Petitioner commenced this collection due process

(CDP) case pursuant to section 6330(d)(1)[1] in response to a determination by the

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code) in effect at all relevant times, and all Rule references are to
the Tax Court Rules of Practice and Procedure.  Some monetary amounts are

(continued...)

[*2] Internal Revenue Service (IRS) Office of Appeals (Appeals) to uphold a proposed levy. The proposed levy seeks to collect an addition to tax (plus interest) that arose from petitioner's failure to timely pay its Federal income tax liability for the fiscal year ending June 30, 2012 (year at issue). The issues for decision are: (1) whether petitioner is liable for the failure-to-pay addition to tax pursuant to section 6651(a)(3)[2] and (2) whether Appeals abused its discretion in sustaining the proposed collection action.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner's principal place of business was in California.

---

[1](...continued)
rounded to the nearest dollar.

[2]The Code provides for two failure-to-pay additions to tax. Sec. 6651(a)(3) provides that a taxpayer who underreports the tax owed on the return, and does not pay this underreported amount within 21 days from the date the IRS demands payment, must pay an addition to tax equal to 0.5% of the unpaid amount per month, not exceeding 25% in the aggregate. Sec. 6651(a)(2) similarly provides that a taxpayer who does not pay the tax reported on a return must pay an addition to tax equal to 0.5% per month of the amount not paid, not exceeding 25% in the aggregate. The IRS' records do not specify which failure-to-pay addition to tax is imposed against petitioner. However, upon the Court's inquiry at trial, the parties agreed it is the sec. 6651(a)(3) addition to tax that is implicated here.

**[*3]** Petitioner timely filed Form 1120, U.S. Corporation Income Tax Return, for the year at issue (original return). Petitioner's original return reported total income of $1,492,281 and claimed total deductions of $1,386,332, resulting in a reported Federal income tax liability of $24,570.[3]

The IRS later audited petitioner's original return and determined that certain adjustments should be made. The IRS determined that petitioner's claimed deduction for "481A Expenses" of $211,754 should be disallowed and an accuracy-related penalty under section 6662(a) should be imposed. During the audit petitioner sought to have the IRS Examination Division accept and process an amended return for the year at issue. However, the manager of the IRS revenue agent conducting the audit would not accept an amended return from petitioner.[4]

Nevertheless, on January 6, 2015, petitioner sent the IRS an amended return, Form 1120X, Amended U.S. Corporation Income Tax Return, for the year at issue, which the IRS Service Center in Ogden, Utah, received on January 9,

---

[3]Petitioner's original return also reported total payments and refundable credits of $11,000 and an estimated tax penalty of $17, resulting in a reported amount owed of $13,587. On April 1, 2013, the IRS assessed the reported liability (plus the reported estimated tax penalty, a "failure to pay tax penalty" of $475, and interest of $222). See sec. 6201(a)(1).

[4]Consequently, petitioner did not sign the audit report for the changes.

[*4] 2015.[5]  This return (like petitioner's original return) was prepared by Brian E. Feldman.  Mr. Feldman holds a master of business administration degree and a master of science in taxation degree; when he prepared petitioner's amended return (as well as its original return), he was employed at Philpott, Bills, Stoll, & Meeks, LLP, a "CPA business management" firm.[6]

Petitioner's amended return reported that its Federal income tax liability required to be shown on its original return was $106,582, resulting in an additional liability of $82,012.  The changes giving rise to the additional liability were explained in Part II, Explanation of Changes to Items in Part I, of petitioner's amended return as follows:

> This return is being amended to account for the following changes.
>
> The tax return was recently audited and it was determined that the IRC 481 adjustment was inadvertently reported incorrectly.  An increase to income in the amount of $211,754 has been corrected pursuant to the revenue agent audit report.
>
> The tax return is also amending depreciation and accumulated depreciation based on recently filed 2010 amended tax returns from the year ended 6/30/2011.

---

[5]We note that although it appears from the IRS' records that the IRS considered petitioner's amended return filed on January 9, 2015, the copy of the return in the record bears a stamp indicating that it was accepted by the IRS on March 26, 2015.

[6]At the time of trial the name of the firm was Philpott Meeks, LLP.

**[\*5]** Petitioner did not remit payment for the additional liability when it submitted the amended return; and because, as discussed infra p. 8, it did not ultimately pay its outstanding liability for the year at issue until March 2016, the section 6651(a)(3) addition to tax accrued and was assessed against petitioner on March 4, 2016 (in the amount of $1,361), and on May 30, 2016 (in the amount of $3,012).[7] See Internal Revenue Manual (IRM) pt. 20.1.2.3.8.5 (Apr. 19, 2011) (the section 6651(a)(3) addition to tax applies to additional amounts assessed as an amendment to the original return).

On January 9, 2015 (the same day it received petitioner's amended return), the IRS sent petitioner a notice of deficiency determining a deficiency in petitioner's Federal income tax of $82,584 and an accuracy-related penalty under section 6662(a) of $16,516 for the year at issue.[8]  On March 17, 2015, petitioner timely petitioned this Court for redetermination of the deficiency and the penalty

---

[7]We note that the IRS is authorized but not required to assess an accrued sec. 6651(a)(3) addition to tax from time to time, and it may collect this addition without assessment.  See Burke v. Commissioner, T.C. Memo. 2009-282, slip op. at 20.

[8]The deficiency amount is $572 greater than the additional liability petitioner reported on its amended return because of, as indicated supra p. 5, a change in depreciation it claimed on that return; that change is not reflected in the IRS' notice of deficiency to petitioner.

**[\*6]** (deficiency case).[9]  The petition included allegations that the IRS erred in not allowing an overpayment for the year at issue on the basis that petitioner had filed an amended return.

In the interim, on April 20, 2015, the IRS assessed against petitioner for the year at issue the additional $82,012 liability (plus interest of $3,813).  Then on July 25, 2015, after providing petitioner with notice and demand for the balance due,[10] the IRS sent petitioner a Notice LT11, Notice of Intent to Levy (levy notice).  The levy notice advised petitioner that the IRS intended to levy to collect the outstanding balance, which, through the date of the levy notice, totaled $52,152 consisting of an "amount * * * owed" of $50,043, "additional penalty charges" of $1,611, and "additional interest charges" of $498, and that it had a right to appeal the proposed collection action.

On August 20, 2015, in response to the levy notice, petitioner's authorized representative, Steven R. Mather (one of petitioner's counsel of record in both the

---

[9]We take judicial notice of our records in the deficiency case.  See Shackelford v. Commissioner, T.C. Memo. 1995-484, slip op. at 14 n.7 ("Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it." (quoting St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979))).

[10]The IRS' records show that the IRS applied credits totaling $35,235 against the additional $82,012 liability.

[*7] deficiency case and this case), timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing (CDP hearing request) on petitioner's behalf. The CDP hearing request challenged the underlying liability; requested the collection alternatives of an installment agreement, an offer-in-compromise, and "I Cannot Pay Balance"; and asked that a CDP hearing be held with Mr. Mather. As the reason for the CDP hearing request, the form stated that "[t]he liability is overstated. An amended return has been filed which eliminates most of the liability".

On October 8, 2015, the deficiency case was set for trial at the trial session of the Court at Los Angeles, California, on March 7, 2016. In early February 2016 a basis for settlement was reached in the deficiency case; the parties agreed that the amount of tax and interest petitioner owed from the unpaid assessment would be approximately $51,404 as of March 2, 2016. This amount did not include the section 6651(a)(3) addition to tax.

In early March 2016 Michael W. Berwind, one of respondent's counsel in the deficiency case,[11] and Mr. Mather began corresponding via email about the proper wording of the stipulated decision document to be lodged with the Court. On March 3, 2016, Mr. Berwind emailed Mr. Mather recommending that a

_____

[11]Mr. Berwind is one of respondent's counsel of record in this case as well.

**[*8]** "below-the-line stipulation that addresses the unpaid but assessed tax" be added to the decision document. There was no objection to the recommendation as on March 4, 2016, Mr. Mather signed the decision document Mr. Berwind had sent him, which included that stipulation. Also on March 4, 2016 (and nearly 11 months after assessment of the additional $82,012 liability), petitioner made a payment of $51,404 to the IRS towards its outstanding balance for the year at issue.

On March 7, 2016, the deficiency case was called from the calendar for the Los Angeles, California, trial session. Mr. Berwind appeared and lodged a signed faxed copy of the decision document. The decision document stated that "there is no deficiency in income tax due from, nor overpayment due to, petitioner for the taxable year ended June 30, 2012" and "[t]hat there is no penalty due from petitioner for the taxable year ended June 30, 2012, under the provisions of I.R.C. § 6662(a)." It also included the "below-the-line" stipulation that "notwithstanding the entry by the Court of the foregoing decision, petitioner has an unpaid assessment of tax and interest for the year at issue in the approximate amount of $51,404[] as of March 2, 2016." The Court entered the decision document with original signatures of Mr. Berwind and Mr. Mather on March 30, 2016.

**[*9]**  Petitioner's CDP hearing request was assigned to Settlement Officer Kevin Pernick (SO Pernick).  On May 12, 2016, SO Pernick held a telephone CDP hearing with Mr. Mather.  During the hearing Mr. Mather contended that the section 6651(a)(3) addition to tax should be abated on the basis of IRS error; to wit, that the underlying $82,012 assessment was erroneous.  SO Pernick noted that the assessment was valid because not only had petitioner filed an amended return reporting the additional $82,012 liability but it also had agreed in the deficiency case (as reflected by the stipulated decision document entered by the Court in that case) that the assessment was valid.  Mr. Mather then argued that petitioner should be excused from the addition to tax under the "First Time Abate" penalty program or, alternatively, on the basis of reasonable cause.  SO Pernick rejected both reasons.  SO Pernick asked Mr. Mather whether petitioner would agree to a streamlined installment agreement to resolve its remaining balance.  In response Mr. Mather stated that petitioner would not agree to that collection alternative (and did not want to proceed with any collection alternative despite requesting otherwise in the CDP hearing request).

Consequently, SO Pernick determined that the proposed levy should be sustained, and on May 23, 2016, Appeals sent petitioner (with a copy to Mr. Mather) a Notice of Determination Concerning Collection Action(s) Under

**[*10]** Section 6320 and/or 6330 of the Internal Revenue Code to that effect (notice

of determination). A summary detailing the matters considered by Appeals and its

conclusions was attached to the notice of determination and included the

following explanations:

## DISCUSSION AND ANALYSIS

1. **Verification of legal and procedural requirements:**

I, ***Kevin Pernick Settlement Officer***, have obtained verification from
the IRS office collecting the tax that the requirements of any
applicable law, regulation or administrative procedure with respect to
the proposed levy or NFTL filing have been met. Computer records
indicate that the notice and demand, notice of intent to levy and/or
notice of federal tax lien filing, and notice of a right to a Collection
Due Process hearing were issued.

*       *       *       *       *       *       *

2. **Issues raised**

Penalty abatement

You raised underlying liability as an issue. You stated "the liability is
overstated. An amended return has been filed which eliminated most
of the liability."

You stipulated in tax court * * * that you (petitioner) has [sic] an
unpaid assessment of tax and interest in the ***approximate*** amount of
$51,404.18 as of March 02, 2016. Your representative * * * signed
the tax court stipulated agreement on March 4, 2016.

Although you paid $51,404.18, the actual amount ***did not*** include
accrued penalty and interest. You did not contact me to secure the

[*11] actual amount of the accrued interest and accrued failure to pay penalty in order to pay the total balance including the accrued failure to pay penalty and accrued interest.

Therefore a balance of accrued penalty and interest is still outstanding in the amount of $4,346.14 which remains unpaid. Therefore, you still have an outstanding balance of $4,346.14 because you did not actually pay the full amount of the entire tax balance including accrued interest and accrued failure to pay penalty.

You raised the issue of first time penalty abatement asking to abate the failure to pay penalty based on first time abatement criteria. You do not qualify for first time abatement criteria under Internal Revenue Manual Section 20.1.1.3.6.1(1)(a) as you had a previously assessed failure to pay penalty and failure to pay estimated tax penalty for tax period June 30, 2010[,] which was within the prior three years.

You also raised the issue of penalty abatement based on reasonable cause. Your represented [sic] stated quote "the late payment should be abated based on reasonable cause because IRS improperly processed the case. This error caused the quote inconsistent, premature, and illegal assessment of the tax."

The accrued failure to pay cannot be abated because the accrued failure to pay is accrued on the tax, penalty, and interest from the date of assessment till the date the assessment is paid. The actual tax was assessed on 04/20/2015 and was not paid until 03/04/2016 and the penalty accrued on the balance which you agreed to of $51,404.00.

I cannot abate [the] failure to pay penalty based on service error because your representative agreed to the assessment by signing the stipulated decision document (dated and signed by Steve Mather March 4[,] 2016) agreeing that the **approximate** amount is $51,404.48. This amount did not include accrued penalty and interest. There is no reasonable cause that can be established if you agree that the assessment is valid by agreeing to the assessment in tax

[*12] court. Therefore, you do not qualify for penalty abatement based on reasonable cause.

Other Issues Raised

No other issues were raised.

Collection Alternatives

Offer in Compromise

You proposed an Offer-in-Compromise as a collection alternative on Form 12153. However, you specifically stated you wanted to proceed with no collection alternatives.

Installment Agreement

You listed Installment Agreement as a collection alternative on Form 12153 Request for a CDP Hearing. I asked your representative if you would agree to a streamlined Installment Agreement to resolve your remaining balance. Your representative did not want to proceed with this collection alternative even though he presented it on Form 12153.

Currently Not Collectible

You did not present financial information in order to determine if collection of the liability should be suspended as Currently Not Collectible (CNC). Your representative conceded that you could full pay the remaining balance but disagreed with the accrued and assessed failure to pay penalties.

**Balancing of need for efficient collection of tax with your concern that the collection action be no more intrusive than necessary.**

You have not made an acceptable proposal for resolution of this case.

**[\*13]** You do not qualify for penalty abatement for reasonable cause based on IRS service error because you agreed that the underlying assessment is valid (see exhibit 1).

Even though you presented collection alternatives on Form 12153, your representative did not want to proceed with collection alternatives. He did not want to proceed with a streamlined Installment Agreement to resolve your balance even though you qualify for a streamlined agreement.

Levy action appears to be the only alternative at this time. Therefore, the proposed levy action balances the need for efficient collection of the taxes with your concern that any collection action be no more intrusive than necessary.

Petitioner timely filed a petition with this Court for review of the notice of determination.

OPINION

## I.     Standard of Review

Under section 6331(a), if any person liable to pay any tax neglects or refuses to do so after notice and demand, the Commissioner is authorized to collect the unpaid amount by way of a levy upon all property and rights to property belonging to such person or upon which there is a lien. Pursuant to section 6330(a), the Commissioner must provide the person with written notice of an opportunity for an administrative hearing to review the proposed levy.

[*14] If an administrative hearing is requested in a levy case, the hearing is to be conducted by Appeals.  Sec. 6330(b)(1).  At the hearing the Appeals officer conducting it must obtain verification that the requirements of applicable law and administrative procedure have been met.  Sec. 6330(c)(1).  The taxpayer may raise at the hearing any relevant issue relating to the unpaid tax or the proposed collection action including spousal defenses, challenges to the appropriateness of the proposed collection action, and collection alternatives.  Sec. 6330(c)(2)(A).  Following the hearing the Appeals officer must determine among other things whether the proposed collection action is appropriate.  In reaching the determination the Appeals officer must take into consideration:  (1) whether the requirements of applicable law and administrative procedure have been met, (2) all relevant issues raised by the taxpayer including offers of collection alternatives, and (3) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that collection be no more intrusive than necessary.  Sec. 6330(c)(3); see also DAF Charters, LLC v. Commissioner, 152 T.C. ___, ___ (slip op. at 10) (May 9, 2019); Lunsford v. Commissioner, 117 T.C. 183, 184 (2001); Ragsdale v. Commissioner, T.C. Memo. 2019-33, at *18-*19; Levin v. Commissioner, T.C. Memo. 2018-172, at *24-*25.

**[*15]** Section 6330(d)(1) grants this Court jurisdiction to review the determination made by Appeals in a levy case. See also DAF Charters, LLC v. Commissioner, 152 T.C. at ___ (slip op. at 10) (citing Callahan v. Commissioner, 130 T.C. 44, 48 (2008)). If the taxpayer files a timely petition for such judicial review, the applicable standard of review depends on whether the underlying tax liability is at issue. Where the taxpayer's underlying tax liability is properly at issue, the Court reviews the liability determination de novo. Id. at ___ (slip op. at 10-11) (and cases cited thereat). The Court reviews administrative determinations made by Appeals regarding nonliability issues for abuse of discretion. Id.

A taxpayer may challenge his underlying tax liability during a CDP hearing (and thereafter in this Court) if he did not receive a notice of deficiency with respect to the liability or did not otherwise have an earlier opportunity to dispute the liability. See sec. 6330(c)(2)(B); sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.; see also DAF Charters v. Commissioner, 152 T.C. at ___ (slip op. at 11) (and cases cited thereat). Petitioner's liability for the section 6651(a)(3) addition to tax for the year at issue is not subject to the IRS' deficiency procedures, and it did not have a prior opportunity to challenge the liability. Accordingly, to the extent the underlying liability is at issue, we will review

**[\*16]** Appeals' determination de novo; we will review Appeals' administrative determination regarding nonliability issues for abuse of discretion.

## II.    Challenge to Underlying Liability

This case centers on petitioner's liability for the section 6651(a)(3) addition to tax.

### A.    Addition to Tax for Failure To Timely Pay Under Section 6651(a)(3)

Section 6651(a)(3) imposes an addition to tax for a taxpayer's failure to timely pay tax assessed as an amendment to an original return within 21 calendar days of notice and demand for payment. See IRM pt. 20.1.2.3.8.5. The section 6651(a)(3) addition to tax was imposed against petitioner for the year at issue because it failed to timely pay, after assessment and notice and demand, the additional $82,012 liability that it failed to show on its original return but instead showed on its amended return for the year at issue.

Petitioner contends that the section 6651(a)(3) addition to tax for the year at issue is unlawful because the $82,012 assessment was itself unlawful.[12] According to petitioner, the assessment violated "the literal terms" of section

_____

[12]We note that respondent does not have the burden of production under sec. 7491(c) regarding petitioner's liability for the sec. 6651(a)(3) addition to tax because petitioner is not an individual; rather, it is a corporation. See Dynamo Holdings Ltd. P'ship v. Commissioner, 150 T.C. 224, 231 (2018) (quoting sec. 7491(c) and NT, Inc. v. Commissioner, 124 T.C. 191, 195 (2006)).

[*17] 6213(a); since the deficiency case was pending when the $82,012 assessment was made, section 6213(a) banned the IRS from making that assessment. Petitioner's contention is ill conceived.

As an initial matter, we note that an amended return filed by a taxpayer reporting an amount due is an admission by that taxpayer of an underpaid tax liability. See Badaracco v. Commissioner, 464 U.S. 386, 399 (1984); Cooley v. Commissioner, T.C. Memo. 2004-49, slip op. at 17. Additionally, the Commissioner is authorized to collect all taxes imposed by the Code. See sec. 6331. An assessment of tax is the first step in that process. See sec. 6201. The two most common assessments are summary assessments and deficiency assessments. Each is a distinct creature of the Code, subject to its own rules and regulations.

The Commissioner is authorized to summarily assess the amount of tax shown not only on a taxpayer's original return but also the amount of any additional tax shown on a subsequently filed amended return. Sec. 6201(a)(1); Meyer v. Commissioner, 97 T.C. 555, 559 (1991).[13] Summary assessments are not subject to the deficiency procedures. See secs. 6211, 6212, and 6213; Meyer v.

---

[13]The Commissioner may also summarily assess and collect certain additions to tax and civil penalties. See Meyer v. Commissioner, 97 T.C. 555, 559 (1991); see also sec. 6665(b).

[*18] Commissioner, 97 T.C. at 560. The preconditions for making such an assessment are a valid filed (original or amended) return and the taxpayer's unconditional admission of liability for the tax shown thereon. See Powerstein v. Commissioner, 99 T.C. 466, 474-475 (1992); Estate of Brourman v. Commissioner, T.C. Memo. 2013-99, at *4-*5.

The Commissioner, however, is not required to accept any return as filed; he is authorized to examine the books, papers, records, or other data of the taxpayer and interview the taxpayer to ascertain the correctness of the return. See sec. 7602(a); secs. 601.103(b), 601.105(b), Statement of Procedural Rules. If the Commissioner pursues an examination and ultimately determines that additional amounts are owed, the summary assessment procedures generally do not apply; rather, the deficiency procedures set forth in sections 6211-6216 do.

Pursuant to the deficiency procedures, before any assessment can be made on the basis of the Commissioner's determinations arising from an examination the Commissioner is required to send by certified or registered mail to the taxpayer a notice of deficiency in respect of those determinations. Secs. 6212(a), 6213. If the taxpayer files a petition with us disputing the determinations set forth in the notice of deficiency within 90 days (or 150 days if the notice is addressed to the taxpayer outside the United States) of the date that the Commissioner sends that

[*19] notice, the Commissioner is further prohibited from assessing the deficiency (and any additions to tax and penalties) while the case is pending before us. Sec. 6213(a). Thus, deficiency assessments are quite different from summary assessments.

All this having been said, petitioner's contention would have merit only if the IRS' $82,012 assessment on April 20, 2015, was a deficiency assessment. But it clearly was not. It was a summary assessment and it was a valid summary assessment because the preconditions for making such an assessment were satisfied: (1) on January 9, 2015, petitioner filed a valid amended return for the year at issue and (2) this return manifested an unconditional admission of liability for an additional $82,012. Indeed, petitioner does not dispute that these preconditions were met. Petitioner's filing of that amended return does not, however, convert the IRS' summary assessment into a deficiency assessment that would be prohibited under section 6213(a) because of the then-pending deficiency case. We also note that the IRS' April 20, 2015, assessment was for $82,012 and not $82,584, the amount the IRS determined as a deficiency in petitioner's Federal income tax in the notice of deficiency it sent to petitioner.

Petitioner's contention is further undermined by the fact that the decision document signed by Messrs. Mather and Berwind and entered by the Court

[*20] reflected that there was no deficiency in petitioner's Federal income tax but that petitioner had an "unpaid assessment of tax" for the year at issue. Thus, if petitioner truly believed that the $82,012 assessment was an unlawful deficiency assessment, we find it curious that Mr. Mather would even have signed this document on its behalf.[14]  Furthermore, even before that and once the levy notice was issued, petitioner could (and should) have sought to enjoin the $82,012 assessment if it truly believed that assessment was unlawful by filing a motion pursuant to Rule 55 in the deficiency case. No such action was taken; instead, petitioner sought relief by submitting a CDP hearing request.[15]  Consequently, the $82,012 assessment was lawful and it follows that the section 6651(a)(3) addition to tax is also lawful.

---

[14]Petitioner also asserts that Mr. Berwind knew that the $82,012 assessment was unlawful but respondent did not make him available at trial despite petitioner's listing him as a witness, and therefore petitioner is entitled to an inference that his testimony "would have been exactly as it seems." We reject this argument seeing as petitioner failed to serve a subpoena on Mr. Berwind and thus he was not required to appear to testify. The proper procedure for the service of subpoenas on witnesses to attend and give testimony at trial is outlined in Rule 147.

[15]Of course by filing its CDP hearing request petitioner caused the IRS' levy efforts to be suspended. See sec. 6330(e).

**[*21] B.     Reasonable Cause and Not Due to Willful Neglect**

We now address whether petitioner can avoid application of the section 6651(a)(3) addition to tax on the grounds that its failure to timely pay was due to reasonable cause and not due to willful neglect.

The Code does not define either "reasonable cause" or "willful neglect".  In the context of an addition to tax for failure to timely file a return pursuant to section 6651(a)(1) (which in part is virtually identical to section 6651(a)(3) (as well as to section 6651(a)(2))), the Supreme Court explained that (i) the taxpayer must prove "both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause'"; and (ii) that "the term 'willful neglect' may be read as meaning a conscious, intentional failure or reckless indifference."  United States v. Boyle, 469 U.S. 241, 245 (1985).

As for reasonable cause for failure to timely pay (as in this case), section 301.6651-1(c)(1), Proced. & Admin. Regs., provides that such failure "will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship * * * if he paid on the due date."

**[*22]** This regulation speaks only of reasonable cause on account of a taxpayer's inability to pay. Petitioner does not allege, and the record does not show, that it was unable to pay the $82,012 without suffering undue hardship. Instead, petitioner contends in its opening brief that it had reasonable cause because it relied on professional advice; that is, it was "specifically directed" by Mr. Mather and Mr. Feldman "not to pay the tax until these confusing and potentially illegal assessment issues could be sorted out."[16] In support of its contention, petitioner relies on Broker v. United States, 86 A.F.T.R.2d (RIA) 2000-6784 (E.D. Pa. 2000), and with respect to Mr. Mather in particular, asserts that he had "all relevant information" and that there can be no question as to "[Mr.] Mather's competency on technical procedural issues such as are present" here. Thus, according to petitioner, "[i]n no version of reality could * * * [it] not be entitled to rely on the advice of [Messrs.] Mather and Feldman".

Notwithstanding that petitioner's contention is seemingly an admission of a "conscious, intentional failure" to timely pay and therefore it cannot satisfy the "not willful neglect" element, on the basis of the record before us its contention

---

[16]Petitioner similarly asserts in its answering brief that when it "received the bill based on the Illegal Assessment, petitioner's representatives advised petitioner that the bill was unlawful and should not be paid until the deficiency case pending before this Court was resolved."

**[\*23]** cannot support a finding of reasonable cause. The balance of petitioner's argument on the reasonable cause issue is just that--argument with no reference to evidence in the record. Statements in a party's briefs are not part of the evidentiary record. See Rule 143(c) ("[S]tatements in briefs \* \* \* do not constitute evidence."); see also Ashkouri v. Commissioner, T.C. Memo. 2019-95, at \*36 (stating that taxpayer-husband's opportunity to testify was at trial and not through supplementing that testimony on brief). There is no evidence in the record concerning communications between petitioner and Mr. Mather or between petitioner and Mr. Feldman conveying any sort of formal advice upon which petitioner relied concerning payment of the $82,012. No officer or employee of petitioner who was informed of the facts testified at trial. The only individual who testified at trial was Mr. Feldman, petitioner's return preparer for the year at issue, and we find his testimony insufficient to establish reasonable cause.[17] Consequently, the facts here are distinguishable from the facts in Broker, and we are not bound to follow the result reached therein in any event.[18] See ADVO, Inc.

---

[17]If anything Mr. Feldman's testimony was self-serving and uncorroborated. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

[18]In Broker v. United States, 86 A.F.T.R.2d (RIA) 2000-6784 (E.D. Pa. 2000), the District Court concluded that the taxpayers' failure to pay their taxes for a particular year was due to reasonable cause and not due to willful neglect not

(continued...)

**[*24]** <u>v. Commissioner</u>, 141 T.C. 298, 313 n.11 (2013) ("[O]pinions of a U.S. District Court do not constitute binding precedent in this Court."); <u>see also</u> <u>Camreta v. Greene</u>, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quoting 18 James Wm. Moore et al., Moore's Federal Practice, para. 134.02[1][d], at 134-26 (3d ed. 2011))).

Accordingly, we find that petitioner did not have reasonable cause for failing to timely pay the $82,012 and we sustain Appeals' determination with respect to petitioner's liability for the section 6651(a)(3) addition to tax for the year at issue.

III.    Challenge to Appropriateness of Proposed Levy

As indicated <u>supra</u> p. 14, in determining whether to sustain a proposed levy Appeals must take into consideration:  (1) whether the requirements of applicable law and administrative procedure have been met, (2) all issues raised by the taxpayer, including offers of collection alternatives, and (3) whether any proposed

---

[18](...continued)
solely because they relied on professional advice, but also because the evidence showed that great efforts were made to procure sufficient funds to pay the tax. Such was not the case here.

**[*25]** collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that collection be no more intrusive than necessary. Sec. 6330(c)(3); see also DAF Charters, LLC v. Commissioner, 152 T.C. at ___ (slip op. at 10); Lunsford v. Commissioner, 117 T.C. at 184; Ragsdale v. Commissioner, at *18-*19; Levin v. Commissioner, at *24-*25. Under the abuse of discretion standard, the Court examines whether an Appeals determination was arbitrary, capricious, or without sound basis in fact or law. See DAF Charters, LLC v. Commissioner, 152 T.C. at ___ (slip op. at 27) (and cases cited thereat). We do not conduct an independent review or substitute our own judgment for that of the Appeals officer. Id. (citing Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006)). If the Appeals officer follows all statutory and administrative guidelines and provides a reasoned, balanced decision, the Court will not reweigh the equities. Id. (and cases cited thereat).

The record establishes that SO Pernick verified that all legal and procedural requirements had been met, see id. at ___ (slip op. at 28) (citing CreditGuard of Am., Inc. v. Commissioner, 149 T.C. 370, 379 (2017)), and determined that the proposed levy appropriately balances the need for the efficient collection of taxes with petitioner's legitimate concern that the action be no more intrusive than

**[\*26]** necessary. Petitioner did not pursue any collection alternatives beyond its initial CDP hearing request. It is not an abuse of discretion for an Appeals officer to sustain a proposed collection action and not consider collection alternatives when the taxpayer has proposed none. <u>Id.</u> (and cases cited threat); <u>see also</u> sec. 301.7122-1(d)(1), Proced. & Admin. Regs. (requiring that offers to compromise a tax liability must be made in writing and must contain all the information prescribed or requested by the IRS). Thus, it is apparent that SO Pernick committed no abuse of discretion in sustaining the proposed levy.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.